1  GAYLE M. ATHANACIO, SBN 130068
   MARK J. LINDERMAN SBN 144685
2  SONNENSCHEIN NATH & ROSENTHAL LLP
   525 Market Street, 26th Floor
3  San Francisco, CA 94105
   415/882-5077 // FAX: 415/882-0300
4  gathanacio@sonnenschein.com
   mlinderman@sonnenschein.com
5
   OTTO F. BECKER, SBN 37375
6  THORNTON, TAYLOR, BECKER & SHINN
   731 Sansome Street, Suite 300
7  San Francisco, CA 94111-1723
   415/421-8890 // FAX: 415/421-0688
8  obecker@thornton-taylor.com

9
   ATTORNEYS FOR DEFENDANT/COUNTERCLAIMANT
10 BOMBARDIER TRANSPORTATION
   (HOLDINGS) USA, INC.
11

12                    UNITED STATES DISTRICT COURT

13               NORTHERN DISTRICT OF CALIFORNIA

14                    SAN FRANCISCO DIVISION

15 CITY AND COUNTY OF SAN FRANCISCO,      )   Case No. C 04-5307 PJH
   A California Municipal Corporation,     )
16                                         )   STIPULATION AND [PROPOSED]
               Plaintiff                   )   ORDER TO ALLOW FILING OF
17                                         )   DEFENDANT AND
   vs.                                     )   COUNTERCLAIMANT
18                                         )   BOMBARDIER TRANSPORTATION
   FACTORY MUTUAL INSURANCE               )   (HOLDINGS) USA, INC.'S FIRST
19 COMPANY, a Rhode Island Corporation,    )   AMENDED ANSWER TO CCSF'S
   BOMBARDIER TRANSPORTATION              )   SECOND AMENDED COMPLAINT
20 (HOLDINGS) USA, INC., a Delaware        )   AND COUNTERCLAIMS AGAINST
   Corporation,                            )   THE CITY AND COUNTY OF SAN
21                                         )   FRANCISCO
22         Defendants/Counterclaimant.     )
                                           )
23 ──────────────────────────────────────  )

24                                             Complaint Filed: December 15, 2004
25
26
27
28
   ─────────────────────────────────────────────────────
   Case No. C 04-5307 PJH

SONNENSCHEIN NATH & ROSENTHAL LLP
525 Market Street, 26th Floor
San Francisco, CA 94105
(415) 882-5000 - Facsimile (415) 882-0300

1    Pursuant to this Court's April 23, 2007 Case Management and Pretrial Order, the parties,

2  by and through their respective counsel, hereby stipulate that Defendant BOMBARDIER

3  TRANSPORTATION (HOLDINGS) USA, INC. may file the attached First Amended Answer

4  To CCSF's Second Amended Complaint And Counterclaims Against The City And County Of

5  San Francisco.

6  IT IS SO STIPULATED.

7  Dated:  September 6, 2007          SONNENSCHEIN NATH & ROSENTHAL LLP

8

9                                    By___/s/_____
                                          GAYLE M. ATHANACIO

10                                   Attorneys for Defendant/Counterclaimant
11                                   BOMBARDIER TRANSPORTATION (HOLDINGS)
                                     USA, INC.
12

13 Dated:  September 6, 2007          WULFSBERG REESE COLVIG & FIRSTMAN P.C.

14

15                                   By_/s/_____
                                          KRIS A. COX

16                                   Attorneys for Plaintiff
17                                   CITY AND COUNTY OF SAN FRANCISCO

18

19 Dated: September 6, 2007           CARLSON, CALLADINE &
20                                    PETERSON, LLP

21                                   By:_____/s/ Joyce Wang_____
22                                          Joyce Wang
                                     Attorneys for Defendant Factory Mutual Insurance
23                                   Company

24

25    It is hereby ordered that Defendant BOMBARDIER TRANSPORTATION

26 (HOLDINGS) USA, INC. ("Bombardier") may file the attached First Amended Answer To

27

28                                          1

Case No. C 04-5307 PJH

BOMBARDIER'S STIPULATION TO FILE
AMENDED ANSWER AND COUNTERCLAIMS

SONNENSCHEIN NATH & ROSENTHAL LLP
525 Market Street, 26th Floor
San Francisco, CA  94105
(415) 882-5000 - Facsimile (415) 882-0300

1    CCSF's Second Amended Complaint And Counterclaims Against The City And County Of San

2    Francisco ("CCSF").  CCSF shall have twenty days from the date of this Order in which to

3    answer or other respond to the First Amended Answer and Counterclaims.

4    IT IS SO ORDERED.

5    Dated: September 7 , 2007

6

7                                    PHYLLIS J. HAMILTON
                                     United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Case No. C 04-5307 PJH

**BOMBARDIER'S STIPULATION TO FILE
AMENDED ANSWER AND COUNTERCLAIMS**

SONNENSCHEIN NATH & ROSENTHAL LLP
525 Market Street, 26th Floor
San Francisco, CA  94105
(415) 882-5000 · Facsimile (415) 882-0300

1   Gayle M. Athanacio (State Bar No. 130068)
    Mark J. Linderman (State Bar No. 144685)
2   SONNENSCHEIN NATH & ROSENTHAL LLP
    525 Market Street, 26th Floor
3   San Francisco, California  94105
    Telephone:  (415) 882-5000
4   Facsimile:  (415) 882-0300
    Email:      gathanacio@sonnenschein.com
5               mlinderman@sonnenschein.com

6   Otto F. Becker (State Bar No.37375 )
    THORNTON, TAYLOR, BECKER & SHINN
7   731 Sansome Street, Suite 300
    San Francisco, California  94111-1723
8   Telephone:  (415) 421-8890
    Facsimile:  (415) 421-0688
9   Email:      obecker@thornton-taylor.com

10  Attorneys for Defendant/Counterclaimant
    BOMBARDIER TRANSPORTATION
11  (HOLDINGS) USA, INC.

12              IN THE UNITED STATES DISTRICT COURT

13              FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                  SAN FRANCISCO DIVISION

15

16  CITY AND COUNTY OF SAN              No. C 04-5307 PJH
    FRANCISCO, a California municipal
17  corporation,                        DEFENDANT AND COUNTERCLAIMANT
                                        BOMBARDIER TRANSPORTATION
18              Plaintiff,              (HOLDINGS) USA, INC.'S FIRST
                                        AMENDED ANSWER TO CCSF'S SECOND
19      vs.                             AMENDED COMPLAINT AND
                                        COUNTERCLAIMS AGAINST THE CITY
20  FACTORY MUTUAL INSURANCE            AND COUNTY OF SAN FRANCISCO
    COMPANY, a Rhode Island corporation,
21  BOMBARDIER TRANSPORTATION
    (HOLDINGS) USA, INC., a Delaware
22  Corporation,

23              Defendants.
                                        Complaint Filed:      December 15, 2004
24

25          Defendant Bombardier Transportation (Holdings) USA, Inc. (hereafter "BT"), for itself

26  and no other party, herewith answers the Second Amended Complaint of the City and County of

27  San Francisco (hereafter "CCSF") as follows:

28          1.      BT admits the allegations of Paragraph 1 of the Second Amended Complaint.

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

2.      BT admits the allegations of Paragraph 2 of the Second Amended Complaint.

3.      BT admits the allegations of Paragraph 3 of the Second Amended Complaint.

4.      BT admits the allegations of Paragraph 4 of the Second Amended Complaint.

5.      BT admits the allegations of Paragraph 5 of the Second Amended Complaint.

6.      BT is without knowledge or information to form a belief as to the truth of the allegations in Paragraph 6 of the Second Amended Complaint, and, on that basis, denies them.

7.      BT is without knowledge or information to form a belief as to the truth of the allegations in Paragraph 7 of the Second Amended Complaint and on that basis, denies them.

8.      BT admits that on or about March 3, 1998, CCSF, by and through its Airport Commission ("SFIA") entered into a contract with BT's predecessor, ABB-Daimler Benz Transportation (North America) Inc (hereafter, "ADTRANZ") and that a portion of that contract is attached as Exhibit A to the Second Amended Complaint.  To the extent a further response is deemed required, BT denies the allegations of Paragraph 8 of the Second Amended Complaint.

9.      BT admits that Contract 5703.A (hereafter the "Contract") is a document that sets forth the terms and conditions of the parties' agreement regarding BT's installation of the Airport Rail Transit System at the San Francisco International Airport ("AirTrain"), and BT denies any allegations inconsistent with its terms and conditions.

10.     BT admits the allegations in Paragraph 10 of the Second Amended Complaint.

11.     BT denies the allegations in Paragraph 11 of the Second Amended Complaint.

12.     BT is informed and believes that CCSF purchased an insurance policy from FMIC. BT is informed and believes that that a copy of the policy is attached to the First Amended Complaint.  BT admits that the insurance policy, Policy UR 495, sets forth terms and conditions. BT denies any allegations inconsistent with its terms.

13.     BT admits the allegations in Paragraph 13 of the Second Amended Complaint.

14.     BT admits that CCSF appears as a named insured on Policy UR 495.

15.     BT is without knowledge or information to form a belief as to the truth of the allegations beginning on line 24 ("Also as a result…") and ending on line 26 ("…Operating

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1    System."). Save and except therefore, BT admits the other allegations in Paragraph 15 of the

2    Second Amended Complaint.

3        16.    BT admits the allegations in Paragraph 16 of the Second Amended Complaint.

4        17.    BT is without knowledge or information to form a belief as to the truth of the

5    allegations in Paragraph 17 of the Second Amended Complaint, and, on that basis, denies them.

6        18.    BT is without knowledge or information to form a belief as to the truth of the

7    allegations in Paragraph 18 of the Second Amended Complaint, and, on that basis, denies them.

8        19.    BT is without knowledge or information to form a belief as to the truth of the

9    allegations in Paragraph 19 of the Second Amended Complaint, and, on that basis, denies them.

10                              **FIRST CAUSE OF ACTION**
                          **BREACH OF CONTRACT AS AGAINST FMIC**

11

12       20.    In answer to Paragraph 20 of the Second Amended Complaint, BT incorporates its

13   answers to Paragraphs 1 through 19 above as though fully set forth herein.

14       21.    BT lacks sufficient knowledge or information to form a belief as to the truth of the

15   allegations in Paragraph 21 of the Second Amended Complaint, and, on that basis, denies them.

16       22.    BT lacks sufficient knowledge or information to form a belief as to the truth of the

17   allegations in Paragraph 22 of the Second Amended Complaint, and, on that basis, denies them.

18       23.    BT lacks sufficient knowledge or information to form a belief as to the truth of the

19   allegations in Paragraph 23 of the Second Amended Complaint, and, on that basis, denies them.

20       24.    BT lacks sufficient knowledge or information to form a belief as to the truth of the

21   allegations in Paragraph 24 of the Second Amended Complaint, and, on that basis, denies them.

22       25.    BT lacks sufficient knowledge or information to form a belief as to the truth of the

23   allegations in Paragraph 25 of the Second Amended Complaint, and, on that basis, denies them.

24       26.    BT lacks sufficient knowledge or information to form a belief as to the truth of the

25   allegations in Paragraph 26 of the Second Amended Complaint, and, on that basis, denies them.

26

27

28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

## SECOND CAUSE OF ACTION
## TORTIOUS BREACH OF COVENANT OF GOOD FAITH AND
## FAIR DEALING AS AGAINST FMIC

27.   In answer to Paragraph 27 of the Second Amended Complaint, BT incorporates its answers to Paragraphs 1 through 26 above as though fully set forth herein.

28.   BT lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 28 of the Second Amended Complaint, and, on that basis, denies them.

29.   BT lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 29 of the Second Amended Complaint, and, on that basis, denies them.

30.   BT lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 30 of the Second Amended Complaint, and, on that basis, denies them.

31.   BT lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 31 of the Second Amended Complaint, and, on that basis, denies them.

32.   BT lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 32 of the Second Amended Complaint, and, on that basis, denies them.

33.   BT lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 33 of the Second Amended Complaint, and, on that basis, denies them.

## THIRD CAUSE OF ACTION
## DECLARATORY RELIEF AS AGAINST FMIC

34.   In answer to Paragraph 34 of the Second Amended Complaint, BT incorporates its answers to Paragraphs 1 through 33 above as though fully set forth herein.

35.   BT lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 35 of the Second Amended Complaint, and, on that basis, denies them.

36.   BT lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 36 of the Second Amended Complaint, and, on that basis, denies them.

37.   BT lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 37 of the Second Amended Complaint, and, on that basis, denies them.

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

### FOURTH CAUSE OF ACTION
### BREACH OF CONTRACT – FAILURE TO PROVIDE STANDBY LETTER OF CREDIT – SPECIFIC PERFORMANCE AGAINST BOMBARDIER

38.   In answer to Paragraph 38 of the Second Amended Complaint, BT incorporates its answers to Paragraphs 1 through 37 above as though fully set forth herein.

39.   BT admits that Special Provision 7.D.9. and the Contract set forth terms and provisions of the parties' agreement regarding payments by CCSF to BT, and, save for said admission, BT denies any allegations inconsistent with those terms and provisions.

40.   BT admits that ADTRANZ provided CCSF a Standby Letter of Credit in an amount equivalent to the amount CCSF contended it was entitled to retain, and that the Standby Letter of Credit expired by its express terms.  Save and except for such admission, BT denies the allegations in Paragraph 40 of the Second Amended Complaint.

41.   BT admits that ADTRANZ provided CCSF a Standby Letter of Credit in an amount equivalent to the amount CCSF contended it was entitled to retain and that the Standby Letter of Credit expired by its express terms.  Save and except for said admission, BT denies the allegations in Paragraph 41 of the Second Amended Complaint.

42.   BT admits the allegations in Paragraph 42 of the Second Amended Complaint.

43.   BT admits that ADTRANZ provided CCSF a Standby Letter of Credit to CCSF in an amount equivalent to the amount CCSF contended it was entitled to retain and that the Standby Letter of Credit expired by its express terms.  Save and except for said admission, BT denies the remaining allegations of Paragraph 43.

44.   BT denies the allegations in Paragraph 44 of the Second Amended Complaint.

45.   BT denies the allegations in Paragraph 45 of the Second Amended Complaint.

46.   BT denies the allegations in Paragraph 46 of the Second Amended Complaint.

47.   BT denies the allegations in Paragraph 47 of the Second Amended Complaint.

48.   BT denies the allegations in Paragraph 48 of the Second Amended Complaint.

49.   BT denies the allegations in Paragraph 49 of the Second Amended Complaint.

**FIFTH CAUSE OF ACTION**
**BREACH OF CONTRACT – FAILURE TO COMPLETE WORK IN A TIMELY**
**MANNER – AS AGAINST BOMBARDIER**

50.    In answer to Paragraph 50 of the Second Amended Complaint, BT incorporates its answers to Paragraphs 1 through 19 above as though fully set forth herein.

51.    BT admits that the Contract sets forth certain terms and conditions of the parties' agreement regarding completion of Work, Notice to Proceed, Substantial Completion, Final Completion, Final Payment, and, except for such admission, BT denies any allegations inconsistent with those terms and conditions.  To the extent a further response is deemed required, BT denies the remaining allegations in Paragraph 51 of the Second Amended Complaint.

52.    BT admits that CCSF issued a Notice to Proceed with Phase 1 on or about March 3, 1998.  Further responding, BT denies the remaining allegations in Paragraph 52 of the Second Amended Complaint.

53.    BT denies the allegations in Paragraph 53 of the Second Amended Complaint.

54.    BT denies the allegations in Paragraph 54 of the Second Amended Complaint.

55.    BT denies the allegations in Paragraph 55 of the Second Amended Complaint.

56.    BT admits that the Contract sets forth certain terms and conditions regarding purported liquidated damages, and except for such admission, denies any allegations inconsistent with those terms and conditions.  To the extent a further response is deemed required, BT denies the remaining allegations of paragraph 56 of the Second Amended Complaint.

57.    BT denies the allegations in Paragraph 57 of the Second Amended Complaint.

58.    BT denies the allegations in Paragraph 58 of the Second Amended Complaint.

**SIXTH CAUSE OF ACTION**
**DECLARATORY RELIEF AS AGAINST BOMBARDIER**

59.    There is no Paragraph 59 in the Second Amended Complaint.

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

60.    In answer to Paragraph 60 of the Second Amended Complaint, BT incorporates its answers to Paragraphs 1 through 58 of the Second Amended Complaint as though fully set forth herein.

61.    BT admits the allegations in Paragraph 61 of the Second Amended Complaint.

62.    BT admits that an actual controversy has arisen and now exists among and between CCSF and BT with respect to the rights and obligations of CCSF and BT under the Contract and that it asserts the right to full payment of the amount of its invoice for the three vehicles.  Save and except for said admission, BT denies the allegations of Paragraph 62 of the Second Amended Complaint.

63.    BT admits that CCSF by its Second Amended Complaint has sought a judicial determination of the respective rights and duties of CCSF and BT under the Contract and Policy UR 495.  Except as so admitted, BT denies the allegations set forth in Paragraph 63 of the Second Amended Complaint.

64.    BT admits that a judicial determination of the respective rights and duties of CCSF and BT under the Contract is necessary and proper.  Save and except for said admission, BT denies the allegations of Paragraph 64 of the Second Amended Complaint.

As its further and separate defenses to the causes of action set forth in CCSF's Second Amended Complaint herein, BT sets forth the following affirmative defenses:

<u>FIRST AFFIRMATIVE DEFENSE</u>

BT has performed in good faith and in a timely and satisfactory manner all of its substantive obligations under the Contract and except for trivial defects or imperfections, has not omitted any of its essential parts.  CCSF has received the benefits and is enjoying the fruits of BT's work since on or about February 24, 2003, the date on which the AirTrain System was substantially completed and went into public service.

<u>SECOND AFFIRMATIVE DEFENSE</u>

To the extent CCSF has suffered damages as alleged in the Second Amended Complaint, which BT denies, BT is entitled to a set off of its damages against CCSF, which are equal to or in excess of the amount alleged by CCSF in the Second Amended Complaint.

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

## THIRD AFFIRMATIVE DEFENSE

CCSF is not entitled to specific performance as alleged by CCSF, of any obligation to provide a Standby Letter of Credit in the amount sought or in any amount at all.  Said specific performance by BT, as sought by CCSF, would require a continuing series of acts that could not be consummated in one transaction.  Performance would require supervision and direction by the court and the exercise of special knowledge, skill and judgment by the court and parties.

## FOURTH AFFIRMATIVE DEFENSE

CCSF has failed to comply strictly with the provisions of the Contract and has contributed to any delay of the construction of Phase I.  As a proximate result thereof, BT is excused from any obligation for payment of liquidated damages to CCSF.

## FIFTH AFFIRMATIVE DEFENSE

CCSF is not entitled to specific enforcement, as alleged by CCSF, of any obligation to provide a Standby Letter of Credit in the amount sought or in any amount at all.  Such specific enforcement if granted would be oppressive and inequitable and would impose a great burden on BT with no corresponding or only a slight benefit to CCSF in that BT substantially completed the construction of the AirTrain System almost three years ago.

## SIXTH AFFIRMATIVE DEFENSE

CCSF is guilty of laches by delaying the prosecution of the claim for insurance benefits against FMIC arising out of the August 4, 2002, collision to the detriment of BT.

## SEVENTH AFFIRMATIVE DEFENSE

CCSF failed to mitigate its damages, the fact and extent of which are expressly denied.

## EIGHTH AFFIRMATIVE DEFENSE

The Fourth Cause of Action in CCSF's Second Amended Complaint fails to set forth facts sufficient to state a cause of action against BT.

## NINTH AFFIRMATIVE DEFENSE

The Fourth Cause of Action in CCSF's Second Amended Complaint seeks equitable relief against BT for which there is an adequate remedy in law.

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

## TENTH AFFIRMATIVE DEFENSE

The Fifth Cause of Action in CCSF's Second Amended Complaint seeks to impose a penalty upon BT in the form of liquidated damages. CCSF's actual damages, if any, are capable of certainty and calculation.

    1.    The Liquidated Damages provision in the Contract provides, in part, as follows:

        3.2    Liquidated Damages

> The Commission and Contractor recognize that time is of the essence of this Agreement and that Commission will suffer financial loss in the form of lost revenues and contract administration expenses (including project management and consultant's expenses) delay and loss of public use if Work is not completed within the time specified in Paragraph 3.1 above plus any extensions thereof allowed in accordance with Contract Documents...

> Total liquidated damages...will be capped at five percent (5%) of the final Phase I contract amount which measure of liquidated damages shall be presumed to be the damages suffered by the Commission resulting from delay in completion of the Work...

[Page 00510-3; ¶3.2]

## ELEVENTH AFFIRMATIVE DEFENSE

BT acted with proper justification and in a reasonable and appropriate manner, in good faith, for a fair, honest and lawful reason, and in compliance with legal requirements.

## TWELFTH AFFIRMATIVE DEFENSE

BT has fully performed all of the covenants, obligations and duties imposed on BT under the terms of the contract(s) at issue.

## THIRTEENTH AFFIRMATIVE DEFENSE

BT's performance under any contract has been excused by CCSF's failure to perform its covenants, obligations, and duties, in whole or in part, under any such contract.

## FOURTEENTH AFFIRMATIVE DEFENSE

All contractual claims for relief are barred by virtue of CCSF's material breach(es) of the Contract. CCSF's breach(es) excused any obligation of BT.

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

FIFTEENTH AFFIRMATIVE DEFENSE

CCSF's contract claims are barred by the application of the doctrine of impossibility of performance.

SIXTEENTH AFFIRMATIVE DEFENSE

CCSF failed to exercise reasonable care concerning the conduct, events and matters alleged in the Second Amended Complaint.  Accordingly, any damages to which CCSF might be entitled, which BT denies, should be reduced by the amount of fault attributable to CCSF.

SEVENTEENTH AFFIRMATIVE DEFENSE

CCSF consented to and/or authorized all conduct and/or omissions of BT alleged in the Second Amended Complaint.

EIGHTEENTH AFFIRMATIVE DEFENSE

The Second Amended Complaint, and each and every purported cause of action therein, is barred by the active fault of CCSF.

NINETEENTH AFFIRMATIVE DEFENSE

Intervening, superseding and/or supervening acts proximately caused CCSF's damages, if any, the existence of which BT expressly denies.

TWENTIETH AFFIRMATIVE DEFENSE

CCSF's claim for liquidated damages is barred as the provision is unenforceable.

TWENTY-FIRST AFFIRMATIVE DEFENSE

To the extent CCSF has failed to mitigate, minimize, or avoid any damage allegedly sustained, recovery, if any, must be reduced by that amount.

TWENTY-SECOND AFFIRMATIVE DEFENSE

CCSF's claim for damages is barred by the doctrine of waiver.  CCSF knowingly and intentionally extended the substantial completion date of Phase I to May 8, 2002.  CCSF and BT were negotiating for a further extension when the August 4, 2002, collision occurred.  BT did not waive its right to contest any claim by CCSF that Phase I could or should have been substantially completed as early as May 8, 2002.

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1

## TWENTY-THIRD AFFIRMATIVE DEFENSE

2   CCSF's claim for damages is barred by the doctrine of estoppel.  CCSF knowingly and

3   intentionally extended the substantial completion date of Phase I to May 8, 2002.  CCSF and BT

4   were negotiating for a further extension when the August 4, 2002, collision occurred.  By its acts

5   and words before the collision on August 4, 2002, CCSF led BT to believe that the substantial

6   completion date of Phase I would be extended without penalty upon BT.  In reasonable and

7   actual reliance thereon, BT forewent processing claims and procedures compelling CCSF to

8   grant an extension.

9

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

10   The Second Amended Complaint, and each and every purported cause of action therein,

11   is barred by the doctrine of unclean hands.

12

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

13   CCSF suffered no damage or injury that was proximately caused by any alleged act or

14   omission of BT.

15

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

16   BT alleges that even if it were found that BT failed to perform some obligation allegedly

17   owed to CCSF (which BT denies), such failure to perform was excused because CCSF

18   prevented and/or hindered BT's performance.

19

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

20   BT alleges that even if it were found that BT failed to perform certain conditions

21   allegedly required under any agreement, such alleged failure was excused because CCSF failed

22   to perform its obligations fully and completely as required by the terms of the Contract, and

23   because performance on CCSF's part was a condition precedent to and/or condition concurrent

24   with the performance of BT's obligations.

25

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

26   BT alleges that the Standby Letter of Credit agreement is unenforceable because CCSF

27   and BT attached materially different meanings to the purported terms of the agreement and

28   therefore there was no mutual assent to that agreement.

1

TWENTY-NINTH AFFIRMATIVE DEFENSE

BT alleges that the Standby Letter of Credit agreement is unenforceable because material terms of that agreement were not reasonably certain.

THIRTIETH AFFIRMATIVE DEFENSE

BT alleges that CCSF is barred from recovery, in whole or in part, by the doctrine of ratification.

THIRTY-FIRST AFFIRMATIVE DEFENSE

BT reserves its right to amend this Answer to the Second Amended Complaint to assert such additional defenses as may become apparent during the course of this action.

## COUNTERCLAIM

Counter-Claimant Bombardier Transportation (Holdings) USA, Inc. ("BT") hereby counterclaims against the City and County of San Francisco ("CCSF") as follows:

## PARTIES, JURISDICTION AND VENUE

1.     BT is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Pittsburgh, Pennsylvania.  BT is engaged in the business of designing, constructing and operating AirTrain System at airports and elsewhere throughout the world.  At all times material, CCSF was and is a California Municipal Corporation that, through its Airport Commission, owned and operated the San Francisco International Airport.

2.     The court has subject matter jurisdiction over this action pursuant to 28 USC § 1332 because there is complete diversity between BT, a citizen of Delaware and Pennsylvania, and CCSF, a citizen of California, and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.     Pursuant to 28 USC § 1391, venue is proper in this district and division because a number of events giving rise to this counterclaim have occurred in this district.

## FACTUAL ALLEGATIONS

### The Contract – General

4.     Beginning in 1997, CCSF invited bids from the public on a two-phase project for the construction and subsequent operation of a AirTrain System at the San Francisco

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

International Airport.  On or about March 3, 1998, CCSF entered into a written contract,

Contract No. 5703.A. ("Contract") with ABB-Daimler-Benz Transportation (North America)

("ADTRANZ") for the construction and subsequent operation of the rail system at the San

Francisco International Airport.

5.    ADTRANZ obtained a combined performance and payment bond in the penal

amount of $116,626,759.00 as required by the Contract binding itself as principal and its sureties

for the complete and proper performance of said Contract.

6.    Phase I of the Contract involved the construction, installation and testing of a

Airport Rail Transit System ("AirTrain"), including vehicles, infrastructure, and control

facilities.  ADTRANZ was given notice to proceed with Phase I on or about March 3, 1998, and

according to the terms of the Contract, was to achieve substantial completion in forty-five (45)

months unless such time was extended.

7.    Phase II involved the operation and maintenance of the completed AirTrain System

for a period of three years following notice to BT to proceed with that phase.  CCSF issued its

Notice to Proceed on Phase II on February 24, 2003.  The Contract grants CCSF the option to

extend the term of Phase II for three additional one-year periods of time.  CCSF has exercised its

options and extended the term of Phase II by two additional years.

### The Contract – OCIP Provision

8.    One portion of the Contract is referred to as "Insurance and Liability" and contains

the provisions relating to the Owner-Controlled Insurance Program ("OCIP").  The provisions

state that CCSF, acting by and through its Airport Commission

> "…will furnish certain insurance coverage as respects project site
> activities by providing an Owner-Controlled Insurance Program
> (hereinafter referred to as OCIP).  The OCIP will be for the benefit of
> contractors and subcontractors of all tiers who have project site
> employees…" [p. 00700-10; ¶5.b]

9.    One of the coverages that CCSF agreed to provide through the OCIP was All-Risk

Builder's Risk insurance described further as

> "…coverage on all materials, equipment and supplies which are to
> become a permanent part of the project…and until completion of such
> erection and final acceptance by Commission.  Coverage shall be for a
> limit equal to the maximum probable loss provided on a replacement

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

cost basis.  A per occurrence deductible will apply depending upon the amount of the initial contract price, as follows:

- $10,000.00 deductible for all contracts $5,000,000.00 and over." [p. 00700-10-11; ¶4.f]

10.   Another provision in the Contract states that

"The Contractors and subcontractors will be named as insureds of the insurance described above.  Prior to the time work is performed on the project site, certificates of insurance for the Builder's Risk…policy will be issued to the contractors and subcontractors, listing the contractors and subcontractors as additional named insureds." [p. 00700-12; ¶4.g]

11.   Another provision in that part of the Contract states that

"The Contractor or his subcontractors shall not by reason of their inclusion under the insurance provided for by the OCIP incur any liability for premiums for the OCIP." [p. 00700-12; ¶4.h]

12.   Another provision in the Contract requires that the Contractor certify that its contract prices

"…exclude all costs of insurance which duplicate the coverages described above."  [p. 00700-12; ¶4.j]

13.   The Contract grants CCSF the option to terminate the OCIP or any part thereof upon thirty days advance notice

"…in which case Contractor and each subcontractor shall immediately secure and maintain replacement insurance comparable to that which was terminated."  [00700-13; ¶4.k]

14.   Another provision in the Contract states that an insurance manual outlining the OCIP would be furnished to the Contractor.  In the manual, which is entitled "Handbook for Contractors," it is stated that Allendale Insurance would be the company that would underwrite the Builder's Risk Insurance under the OCIP.  BT is informed and believes that the Allendale Mutual Insurance Company was the lead company of a three member inter-company pool of insurers known as the Allendale Group.

15.   On or about October 29, 2001, CCSF issued a Termination Notice of the Owner Controlled Insurance Program.  On or about December 1, 2001, CCSF rescinded its Notice of OCIP Termination and extended the OCIP to completion of the projects that were originally covered under the OCIP.  A true and correct copy of CCSF's Inter-Office Memorandum Letter,

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

dated November 30, 2001, is attached as **Exhibit 1**.  CCSF represented that the Builder's Risk

Insurance would be provided by the FM Group.  BT is informed and believes that the FM Group

is also known as the Factory Mutual System and that Allendale Mutual Insurance Company is

one of its member companies.

      16.   In another portion of the Contract referred to as "Contract Award and

Commencement of Work," it is stated that

> "…[the] Contractor and its subcontractors must be enrolled in the
> Airport OCIP program."  [00700-9. ¶3.d.2]

      17.   CCSF did not obtain and provide BT with any certificate of insurance, identifying

BT as a named insured, issued by or on behalf of the FM Group, or the Allendale Mutual

Insurance Company or any Builder's Risk insurer on this project as required by OCIP.

## The FMIC Policy

      18.   BT is informed and believes that pursuant to the Contract, CCSF procured from the

Factory Mutual Insurance Company policy no. UR495 (the "Policy") with a policy period

effective September 1, 2001-2002.  On information and belief, BT alleges that the Policy

identifies CCSF as a named insured and insures CCSF's interest in the San Francisco

International Airport and San Francisco International Master Plan Expansion Program.  On

information and belief, BT alleges that CCSF failed to procure insurance naming BT as an

insured as was required under the Contract.

      19.   BT is informed and believes that the Policy is subject to a $100,000.00 deductible

and that the Policy insures new buildings and additions under construction at the San Francisco

International Airport as well as personal property.  BT is further informed and believes that the

Policy insures the interests of contractors in said property to the extent of CCSF's legal liability

for damage to such property.

      20.   BT is informed and believes that the Policy expressly provides time-element

coverages to CCSF as a named insured for gross earnings loss, rental income loss and extra

expense loss resulting from physical loss or damage to insured property at the San Francisco

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

International Airport.  BT alleges on information and belief that the Policy expressly provides that such coverage does not extend to unnamed contractors such as BT.

### The Collision, Repairs and Replacement

21.    Phase I of the Contract involved the construction, installation and testing of the AirTrain System infrastructure, vehicles and control facilities.  During construction, CCSF formally extended the time for BT to substantially complete Phase I to May 8, 2005, and was in negotiations regarding further extensions.  On August 4, 2002, two test trains collided.  The collision occurred during testing procedures being conducted on the entire system.  The AirTrain System had been expected to be put into public service upon completion of the testing procedure.

22.    The collision damaged and destroyed infrastructure and appurtenances on the system as well as three vehicles.  After the collision, CCSF required that BT undertake extensive investigation and testing of the entire System, replace the three destroyed vehicles, and repair the damaged infrastructure, all of which BT did.  The AirTrain System went into public service on or about February 24, 2003.

23.    On or before September 2, 2003, BT replaced the destroyed vehicles with three new vehicles valued at $5,398,000.00.  BT submitted its September 2, 2003, invoice to CCSF in the amount of $5,179,411.98, representing the replacement value of the three new vehicles less an allowance for salvage from the destroyed vehicles.

24.    On September 2, 2003, BT notified CCSF of the $178,146.45 cost of repairs, plus associated transportation costs resulting from the collision.

### Delayed Access and Other Excused Delays

25.    During construction, CCSF failed to provide BT with timely access to various stations, segments, and equipment rooms.  Many station platforms and equipment rooms were inaccessible for periods exceeding 150 days beyond the access times promised in the Contract.  CCSF's failure to provide access to stations, segments, and equipment rooms delayed Contract completion, disrupted contract work and damaged BT.  Failure to provide access also caused BT to perform work out of sequence, producing additional disruption and delay in Contract

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1  completion. Construction defects in some station platforms further stymied BT's work. CCSF

2  regularly failed to review and approve BT's completed work in a timely manner, thus causing

3  further delay and disruption.

4      26.   Both before and after the August 4, 2002 collision, CCSF required BT to perform

5  additional work not included in the Contract. CCSF raised BT's costs by ordering changes,

6  accelerating work and requiring system-wide reviews.

## Phase II of the Contract

7      27.   Under Phase II of the Contract, BT agreed to operate and maintain the AirTrain

8      System for a term of three years following its construction and installation.

9

10     28.   On February 24, 2003, BT was notified by CCSF to proceed with Phase II of the

11  Contract. BT commenced work on Phase II at that time and has continued to do so. Phase II is

12  expected to be completed on or about February 24, 2006.

13     29.   On October 11, 2005, CCSF notified BT that CCSF was exercising its option under

14  the Contract to extend the term of Phase II from February 24, 2006, to February 24, 2007.

15  Thereafter, CCSF notified BT that CCSF was exercising its option under the Contract to extend

16  the term of Phase II from February 24, 2007 to February 24, 2008.

## CCSF's Claims

17

18     30.   BT assisted CCSF, at its request, in preparing and presenting its claim for

19  indemnity to FMIC for the physical damage and time element losses CCSF sustained arising out

20  of the August 4, 2002 collision.

21     31.   In the course of preparing its claim for indemnity against FMIC, CCSF represented

22  to BT that any difference that CCSF and BT might have with regard to any claim each may have

23  against the other arising out of the Contract should await the resolution of CCSF's claim against

24  FMIC. As a result, and in reliance thereon, BT did not present CCSF with a formal claim under

25  the procedures set forth in the Contract for damages or other relief. CCSF initially honored its

26  agreement and filed its complaint herein against FMIC, only, on December 15, 2004.

27

28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

32.   In its First Amended Complaint, filed on December 28, 2004, CCSF alleged that FMIC paid CCSF the sum of $3,224,786.22 as indemnity for the losses claimed by CCSF arising out of the August 4, 2002 collision.

33.   CCSF has not paid BT any part of its recovery from FMIC and on December 1, 2005, filed its Second Amended Complaint, naming BT as a new defendant.  CCSF now asserts that BT owes CCSF monies for actual damages arising out of the August 4, 2002 collision and for liquidated damages due to delay in completing Phase I.

34.   The portion of the Contract referred to as "Contract Time" contains the following provisions relating to "Liquidated Damages":

> "The commission and Contractor recognize that time is of the essence of this Agreement and that Commission will suffer financial loss in the form of lost revenues and contract administration expenses (including project management and consultant's expenses), delay and loss of public use if Work is not completed within the time specified in paragraph 3.1 above plus any extensions thereof allowed in accordance with the Contract Documents.  Consistent with Paragraph 15.f of Document 00700 (General Conditions), Contractor and Commission agree that because of the nature of the Project, it would be impractical or extremely difficult to fix the amount of actual damages incurred by Commission because of a delay in completion of the Work.  Contractor and Commission also recognize the delays, expense and difficulties involved in calculation and proof of the actual loss suffered by Commission if Work is not completed on time.  Accordingly, instead of requiring such proof, Commission and Contractor agree that as liquidated damages for delay Contractor shall pay Commission for each day that expires after the time specified in paragraph 3.1 for Substantial Completion until Work is substantially complete, as follows:

| Calendar Day Beyond Substantial Completion Date | Amount |
|---|---|
| Day 1 through Day 30 | $10,000.00 per Calendar Day |
| Day 31 through Day 60 | $25,000.00 per Calendar Day |
| Day 61 and Beyond | $45,000.00 per Calendar Day |

> Total liquidated damages under the Contract will be capped at five percent (5%)of the final Phase I contract amount, which measure of liquidated damages shall be presumed to be the damages suffered by the Commission resulting from delay in completion of the Work.

> Liquidated damages for delay shall only cover damages suffered by Commission as a result of delay.  Liquidated damages shall not cover

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

the cost of completion of the Contract, damages resulting from defective work, damages suffered by others who then seek to recover their damages from the City or Commission (for example, delay claims of other contractors, subcontractors or Airport tenants) or defense costs thereof. [p. 00510-3; ¶¶ 3.2 & 3.3]

35.   Another portion of the Contract, referred to as "Time Allowances," also contains provisions regarding "Liquidated Damages" as follows:

Liquidated Damages shall be considered not as a penalty but as agreed monetary damage sustained by Commission for loss of revenue and increased project administration expenses, including extra expense inspection, construction management and architectural and engineering expenses, related to this Contract because Contractor failed to perform complete work within a time fixed for completion or extensions of time as have been allowed pursuant to provisions thereof.  Liquidated Damages shall not be deemed to include within their scope additional damages arising from defective work, cost of completion of the Contract or damages suffered by others for other forms of liability claimed against City or Commission as a result of delay (*e.g.*, delay or delay related claims of other contractors, subcontractors or airport tenants) or defense costs thereof; contractors shall be responsible for the actual amount of any such damages." [00700-54; ¶ 15.f.4]

36.   BT denies that it owes CCSF for any actual damages or for any Liquidated Damages under the Contract or as a result of the August 4, 2002, collision.

### Failure to Release Performance Bond

37.   Under the terms of the Contract, CCSF was required to issue a Notice of Completion and thereby allow for the release of the performance bond obtained by BT in conjunction with its work on Phase I as the rail system has been completed and has been in public service for almost three years.

38.   BT has requested that CCSF issue a Certificate of Final Acceptance or Notice of Completion regarding Phase I so as to permit BT to terminate the performance bond.

39.   CCSF has wrongfully refused to issue a Notice of Completion although required to do so.

40.   As a direct and proximate result thereof, BT continues to pay a premium for the bond.  Moreover, the existence of the bond restricts BT's bonding capacity with respect to potential other projects, to BT's detriment.

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

**Failure to Refund Retainage**

41.   CCSF has retained monies due BT for the work it performed on Phase I, despite the fact that the rail system has been completed and has been in public service for almost three years.  BT has demanded that CCSF pay the retained monies to BT.  CCSF has refused to pay the retained monies to BT.

**Count One: Breach of Contract -- Breach of Contract re Delay and Additional Work**

42.   BT incorporates as though specifically set forth the allegations in Paragraph 1-41 of the Counterclaim.

43.   In and by the terms of the Contract compensable and excusable delay shall be determined as follows:

"2)   The Contract Times (or milestones) will be adjusted in an amount equal to the time lost due to the following:

a)   Changes in the work ordered by Commission;

b).   Acts or neglect by Commission, or its Project Manager, acts or neglect of utility owners , acts or neglect of other contractors performing other work…

c.   Fires, floods, abnormal weather conditions, earthquakes, civil disturbances, government order or regulations, or other acts of God…" [00700-52; ¶ 15.b.2]

44.   In and by the terms of the Contract "[a]djustments made in cost of performance may have a mutually agreed fixed or percentage fee." [00700-43; ¶ 13.f.3]

45.   In and by the terms of the Contract "[c]ontractor may be compensated for delays caused directly and solely by Commission…." [00700-53; ¶ 15.d]

46.   BT has performed all conditions, covenants and promises reasonably required on its part to be performed in accordance with the terms and conditions of the Contract, including submitting claims for equitable contract extensions.

47.   CCSF delayed and disrupted BT's work on the project and increased the cost of that work by, among others: issuing change orders; preventing access to station platforms, segments, equipment rooms, or to portions of station platforms, segments, and equipment rooms; and by failing to prevent and correct the faulty work of other contractors.  CCSF further

1  delayed BT's work and completion of the contract and increased BT's costs by ordering

2  system-wide reviews, additional work, and accelerated work.

3      48.   Despite the foregoing, CCSF refuses to excuse any delay in Contract completion

4  and refuses to compensate BT for delay, changed work, additional work, and accelerated work

5  caused by CCSF.

6      49.   As a direct and proximate result of CCSF's breach, BT has been damaged in an

7  amount (including increased costs and profits) to be proven at trial, together with interest

8  thereon at the statutory rate.

9      **Count Two: Breach of Contract – Failure to Release Performance**

10     **Bond/Issue Notice of Final Acceptance**

11     50.   BT incorporates as though specifically set forth the allegations in Paragraph 1-47 of

12  the Counterclaim.

13     51.   BT has performed all conditions, covenants and promises reasonably required on

14  its part to be performed in accordance with the terms and conditions of the Contract, including

15  obtaining a construction performance bond.

16     52.   On or about February 24, 2003, CCSF began service to the public of the rail system

17  constructed by BT under the Contract and referred to herein. Ever since that date, CCSF has had

18  the benefit and enjoyed the fruits of BT's work in constructing, installing and testing such rail

19  system.

20     53.   On February 24, 2003, CCSF issued to BT a Notice to Proceed on Phase II of the

21  Contract.

22     54.   Phase II had a term of three years and expired on February 24, 2006. Under the

23  provisions of the Contract, CCSF had the option to extend the term of BT's operation and

24  maintenance of the AirTrain System. Thereafter, CCSF exercised its options and extended BT's

25  operation and maintenance of the AirTrain System to February 24, 2008.

26     55.   Despite the foregoing, CCSF has failed and refuses to perform the conditions of the

27  Contract in that it has failed and refuses to issue to BT a notice of final acceptance of Phase I of

28  the Contract and to release BT from its Phase I construction performance bond.

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

56.   BT's bonding capacity with respect to obtaining performance bonds on other construction projects has been reduced by the amount of the construction performance bond obtained for the Contract.  As a direct and proximate result of CCSF's failure to release BT from the construction performance bond under the Contract, BT has already lost the opportunity to bid on other projects.  BT has been directly or incidentally damaged thereby in an amount to be proven at trial.

57.   BT has no adequate legal remedy as respects the continuing failure of CCSF to release BT from its Phase I construction performance bond under the Contract in that any damages for future lost profits would be extremely difficult if not impossible to ascertain and any such damages would be inadequate to compensate BT for the detriment suffered by it.

### Count Three: Breach of Contract re Repairs/Replacement

58.   BT incorporates as though specifically set forth the allegations of Paragraphs 1-55 of BT's Counterclaim.

59.   On or before September 2, 2003, BT constructed three new vehicles for and at the request of CCSF to replace the three vehicles that had been destroyed in the August 4, 2002 collision.  BT also repaired the guideway, trackway and appurtenances associated with the rail system that were damaged in the collision of August 4, 2002, and incurred associated transportation costs, for and at the request of CCSF.  The reasonable value of the cost of replacing the vehicles, repairing the guideway, trackway and appurtenances plus associated transportation costs is $5,357,545.42.  BT has demanded payment of said amount from CCSF.

60.   CCSF has not paid and refuses to pay said amount or any portion thereof to BT.

61.   By reason thereof, BT has been damaged in the amount of $5,357,545.42, together with interest thereon at the statutory rate from September 2, 2003, to the present.

### Count Four: Breach of Contract – Failure to Procure Insurance

62.   BT incorporates as though specifically set forth the allegations of Paragraphs 1-59 of BT's Counterclaim.

63.   Under the terms of the Contract, CCSF was required to obtain a Builder's Risk insurance policy that provided coverage for a limit equal to the maximum probable loss on a

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1   replacement cost basis, subject to a $10,000.00 deductible, for the benefit of itself and of BT as

2   named insureds until completion and acceptance of the project.

3       64.   CCSF breached the Contract by obtaining a first-party property policy that named

4   CCSF as an insured but not BT, that contained a $100,000.00 deductible instead of a $10,000.00

5   deductible, that insured the interests of a contractor in insured property during construction at an

6   insured location but only to the extent of CCSF's legal liability for any insured physical loss or

7   damage to such property, and, that specifically did not extend to a contractor any time element

8   coverage provided to CCSF under the policy.

9       65.   As a direct and proximate result of CCSF's breach, BT has been damaged in an

10   amount equal to the maximum probable loss on a replacement cost basis that it sustained in the

11   collision of August 4, 2002, including but not limited to, $5,357,545.42 for the replacement of

12   three vehicles and the repairs to the guideways, trackways and appurtenances and associated

13   transportation costs; for an additional amount equal to the amount of the time-element loss for

14   which CCSF seeks to hold BT liable due to the delay in the completion of the project as a result

15   of the August 4, 2002 collision; and, for an amount equal to any deductible exceeding $10,000

16   that BT may be required to pay in connection with any insurance indemnity received by CCSF

17   on account of the August 4, 2002 collision.

18       66.   As a direct and proximate result of CCSF's failure to name BT as an insured, BT

19   has incurred attorneys' fees and other costs associated with responding to FMIC's claims against

20   BT in this matter.

21           **Count Five: Intentional Misrepresentation**

22       67.   BT incorporates as though specifically set forth the allegations in Paragraphs 1-64

23   of the Counterclaim.

24       68.   By signing the Contract and thereafter issuing its December 1, 2001 letter

25   extending the OCIP, CCSF expressly represented to BT that CCSF had complied with the OCIP

26   provisions in the Contract and had obtained a Builder's Risk insurance policy that provided

27   coverage for a limit equal to the maximum probable loss on a replacement cost basis, subject to

28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

a $10,000.00 deductible, for the benefit of itself and of BT as named insureds until completion and acceptance of the project.

69.   Instead of obtaining such a Builder's Risk policy, CCSF knowingly and intentionally obtained a first-party property policy that named CCSF as an insured but not BT, that contained a $100,000.00 deductible instead of a $10,000.00 deductible, that insured the interests of a contractor in insured property during construction at an insured location but only to the extent of CCSF's legal liability for any insured physical loss or damage to such property, and, that specifically did not extend to a contractor any time element coverage provided to CCSF under the policy.

70.   CCSF knew that its representation to BT was false.  CCSF knew and intended that BT would rely upon the truth of CCSF's representation because the Contract required BT to participate in the OCIP and to forego charging CCSF for the cost of any Builder's Risk insurance that duplicated the OCIP coverage.

71.   In reasonable and actual reliance upon CCSF's representations, BT did not obtain, secure or maintain replacement Builder's Risk insurance comparable to that which was promised to BT under the OCIP insurance program.

72.   As a direct and proximate result of CCSF's misrepresentation and its failure to comply with aforementioned provisions in the Contract for insurance protection, BT has been damaged in an amount equal to the maximum probable loss on a replacement cost basis that it sustained in the collision of August 4, 2002, including but not limited to, $5,357,545.42 for the replacement of three vehicles and the repairs to the guideways, trackways and appurtenances and associated transportation costs; for an additional amount equal to the amount of the time-element loss for which CCSF seeks to hold BT liable due to the delay in the completion of the project as a result of the August 4, 2002 collision; and, for an amount equal to any deductible exceeding $10,000 that BT may be required to pay in connection with any insurance indemnity received by CCSF on account of the August 4, 2002 collision.

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1   73.   As a direct and proximate result of CCSF's misrepresentation and failure to name

2   BT as an insured, BT has incurred attorneys' fees and other costs associated with responding to

3   FMIC's claims against BT in this matter.

**Count Six: Negligent Misrepresentation**

4

5   74.   BT incorporates as though specifically set forth the allegations in Paragraphs 1-70

6   of the Counterclaim.

7   75.   Instead of obtaining the required Builder's Risk policy, CCSF obtained a first-party

8   property policy that named CCSF as an insured but not BT, that contained a $100,000.00

9   deductible instead of a $10,000.00 deductible, that insured the interests of a contractor in insured

10  property during construction at an insured location but only to the extent of CCSF's legal

11  liability for any insured physical loss or damage to such property, and, that specifically did not

12  extend to a contractor any time element coverage provided to CCSF under the policy.

13  76.   CCSF acted negligently in making its representation to BT.  CCSF knew or should

14  have known its representation was false and that BT would rely upon the truth of CCSF's

15  representation because the Contract required BT to participate in the OCIP and to forego

16  charging CCSF for the cost of any Builder's Risk insurance that duplicated the OCIP coverage.

17  77.   In reasonable and actual reliance upon the representations in the OCIP provisions

18  and the December 1, 2001 letter, BT did not obtain, secure and maintain replacement Builder's

19  Risk insurance comparable to that which was promised to BT under the OCIP insurance

20  program.

21  78.   As a direct and proximate result of CCSF's misrepresentation and its failure to

22  comply with aforementioned provisions in the Contract for insurance protection, BT has been

23  damaged in an amount equal to the maximum probable loss on a replacement cost basis that it

24  sustained in the collision of August 4, 2002, including but not limited to, $5,357,545.42 for the

25  replacement of three vehicles and the repairs to the guideways, trackways and appurtenances

26  and associated transportation costs; for an additional amount equal to the amount of the time-

27  element loss for which CCSF seeks to hold BT liable due to the delay in the completion of the

28  project as a result of the August 4, 2002 collision; and, for an amount equal to any deductible

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

exceeding $10,000 that BT may be required to pay in connection with any insurance indemnity received by CCSF on account of the August 4, 2002 collision.

79. As a direct and proximate result of CCSF's misrepresentation and failure to name BT as an insured, BT has incurred attorneys' fees and other costs associated with responding to FMIC's claims against BT in this matter.

### Count Seven: Breach of Contract Re Retainage

80. BT incorporates as though specifically set forth the allegations of Paragraphs 1-76 of the Counterclaim.

81. In and by the terms of the Contract, it is stated, in part, as follows:

C.      Payment Requests

1.      On or before the twenty-second (22nd) day of each month, the Contractor shall submit…a payment request for the cost of the Work, completed in accordance with the Milestones and Intermediate Milestones identified by the Schedule of Values and found acceptable by the Project Manager during the previous one month period…

7.      Monthly progress payments shall be made, based on total value of milestone or intermediate activities completed…

D.      Progress Payments

7.      Completion of all milestones, intermediate milestones, or Work for which payment is requested shall be subject to acceptance by Project Manager….

8.      As soon as practicable after favorable review of each request for progress payment, Commission will pay to Contractor…an amount equal to 90 percent of Project Manager's estimate,… provided that payments may at any time be withheld if, in judgment of Project Manager, work is not proceeding in accordance with Contract, or Contractor is not complying with requirements of Contract.

9.      When Project Manager determines that Contract is 50 percent or more complete, Contractor is making satisfactory progress and there is no specific cause for greater withholding, progressive payments may be made not to exceed an amount the lesser of either 95 percent of value of Work furnished pursuant to the favorably reviewed Schedule of Values or 95 percent of Contract Sum…and provided further that when Project Manager determines that Contract is 95 percent complete, funds withheld may be reduced to an amount equal to 125 percent of estimated value of work yet to be completed as determined by Project Manager….

[Pages SP 7-4 through SP 7-6; ¶c]

82. By February 24, 2003, BT had substantially completed Phase I and the rail system was put into public service. CCSF failed to deal fairly and in good faith with BT with regard to

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1  payment for work completed by not exercising its discretion as owner to reduce the funds

2  withheld from progress payments due BT to an amount equal to 125 percent of the estimated

3  value of the work yet to be completed on Phase I.

4       83.   BT alleges further that in and by California Public Contract Code §7107, it is

5  stated, in part, as follows:

6            Section 7107: Release of Retention after Completion…

7   a)   This section is applicable as to all contracts entered into on or
          after January 1, 1993, relating to the construction of any public
8         work of improvement;

    b)   The retention proceeds withheld from any payment by the
9         public entity from the original contractor…shall be subject to
          this Section;

10  c)   Within 60 days after the date of completion of the work of
          improvement.  The retention withheld by the public entity shall
11        now be released…for purposes of this subdivision "completion"
          means any of the following:

12  1.   The occupation, beneficial use and enjoyment of a work of
          improvement…

13  f)   In the event retention payments are not made within the time
          period required by this section, the public entity…withholding
14        the unpaid amount shall be subject to a charge of 2 percent per
          month on the improperly withheld amount in lieu of any interest
15        otherwise due.  Additionally, in any action for the collection of
          funds wrongfully withheld, the prevailing party shall be entitled
16        to attorney's fees and costs.

17       84.   Since February 24, 2003, CCSF has occupied and otherwise had the beneficial use

18  and enjoyment of the Phase I work performed by BT under the Contract.

19       85.   CCSF has retained funds in the amount of $763,459.21 due BT as progress

20  payments for Phase I work in violation of §7107 of the Public Contract Code.  BT has

21  completed additional work on Phase I in the additional amount of $960,956.26 that CCSF has

22  acknowledged but refused to pay.

23       86.   As a direct proximate result of CCSF's breach, BT has been damaged in the amount of

24  $1,724,415.47, together with interest thereon at the statutory rate from July 13, 2004, date to the

25  present.  BT has also incurred attorney's fees and costs in connection with pursuing this claim.

26       **WHEREFORE,** BT prays the judgment and relief of the Court as follows:

27  (1.)   that CCSF take nothing by its Second Amended Complaint and that judgment be

28         entered in BT's favor as to the damages claimed by CCSF against BT;

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

(2.)   that CCSF's claims against BT be dismissed with prejudice;

(3.)   that an order be entered in favor of BT on its counterclaim compelling CCSF to specifically perform its obligation to release BT from its construction performance bond;

(4.)   that judgment be entered for BT on its counterclaims against CCSF for damages and interest according to proof;

(5.)   for all costs, and expenses, including attorney's fees, incurred according to proof and as authorized by law; and

(6.)   for such other and further relief as the Court deems just and proper in the circumstances.

## DEMAND FOR JURY TRIAL

BT demands a jury trial on all triable issues.

Dated:  September 6, 2007

GAYLE M. ATHANACIO
SONNENSCHEIN NATH & ROSENTHAL LLP

THORNTON, TAYLOR, BECKER & SHINN

_____/s/ Gayle M. Athanacio_____
GAYLE M. ATHANACIO

Attorneys for Defendant/Counterclaimant
BOMBARDIER TRANSPORTATION
(HOLDINGS) USA, INC.

27275413

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

# EXHIBIT 1

PROSAUSTER
AIRT Contract 5789.A

NOV 30 2001

RECEIVED

## SAN FRANCISCO INTERNATIONAL AIRPORT
## CITY AD COUNTY OF SAN FRANCISCO

### INTER-OFFICE MEMORANDUM

TO:      Louis Suarez              DATE:        November 30, 2001
         PGH Wong

FROM:    Marge Layne
         Insurance Manager

SUBJECT: Extension of OCIP Insurance Program


This is to advise that effective December 1, 2001 we have extended the OCIP insurance program to completion of the projects which were originally covered under the Airport's OCIP program.

| | |
|---|---|
| Workers' Compensation | Argonaut Insurance Company |
| General Liability | St. Paul Insurance Company |
| Builder's Risk | FM Group |

Please advise if you require any further information.



Cc:  Antonio Eshabarr